**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| THERESA WHITE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:04-CV-0790-JOF |
| GEORGIA DEPARTMENT OF | : | |
| MOTOR VEHICLE SAFETY, | : | |
| | : | |
| Defendants. | : | |

## OPINION AND ORDER

This matter is before the court on Defendant's motion for summary judgment [25]

I.    **Background**

A.    **Procedural History**

On March 19, 2004, Plaintiff, Theresa White, filed this action against Defendant, the Georgia Department of Motor Vehicle Safety, for alleged violations of the Americans with Disability Act (hereinafter "ADA"), the Rehabilitation Act of 1973, and of the Georgia Fair Employment Act.  Plaintiff's complaint seeks equitable damages including but not limited to back pay, compensatory damages for humiliation, pain, and suffering, and attorney's fees.  On April 6, 2005, Defendant moved for summary judgment.

**B.** **Facts**

Between 1992 and 2001, Plaintiff was employed by the Department of Public Safety, one of the predecessors of Defendant, as a secretary with mostly clerical duties.[1]   In 2001, the Georgia State Legislature created the Department of Motor Vehicle Safety.   Into this department the government moved some of the employees from various state departments including the Department of Public Safety, the Department of Revenue, and the Department of Transportation.   Plaintiff was transferred from her position at the Department of Public Safety to a position as a secretary at the Department of Motor Vehicle Safety.   Plaintiff was notified that she could either accept the position of "License Examiner" or lose her employment with the Defendant because Defendant was eliminating strictly secretarial positions.   Defendant required all clerical employees to become "License Examiners" in an effort to make the office more efficient.

In an affidavit submitted in support of the summary judgment motion, the Director of Driver Services at the Department of Motor Vehicle Safety, Mr. Ronny Johnson, testified regarding the requirements of the License Examiner position.   He stated that "[t]he entire reason the Driver's License Examiner position exists is to test applicants for eligibility to

---

[1] The court observes as an initial matter that Plaintiff has failed to file a statement of material facts in response to Defendant's statement of material facts in accordance with the Local Rules of this Court.   Rather, Plaintiff merely addressed some of Defendant's undisputed material facts in its "statement of facts" within its response brief.   While it is within the court's power to accept Defendant's facts as admitted, the court declines to do so in light of the fact that such action would not affect the outcome of the instant motion.

AO 72A
(Rev.8/82)

receive / renew a driver's license." He emphasized that "[p]ossessing a valid Georgia driver's license is a requirement for the position of License Examiner because one of the essential functions of the position is to conduct road tests."

Moreover, in the official job description, one of the stated duties of the position of License Examiner is to administer road tests to evaluate an applicant's driving ability. For this reason, the description requires that all applicants for the position of License Examiner must possess a valid Georgia driver's license.

On August 24, 2002, Plaintiff experienced a seizure and was diagnosed with epilepsy. Georgia law requires that any person suffering a seizure must surrender his or her license, which is not to be reinstated until that person is seizure-free for a period of six months. On October 3, 2002, despite her condition, her knowledge of the Georgia law, and her knowledge of the duties of a License Examiner, Plaintiff opted to take that position at the Defendant's Dublin office rather than end her employment with Defendant.

Following her acceptance of the position of License Examiner, Defendant suffered seizures in December 2002, January 2003, February 2003 (twice), April 2003, and June 2003. Plaintiff requested and received approval for "Family and Medical Leave" from February 25, 2003, through May 19, 2004. Plaintiff utilized this leave through April 16, 2003, after which she returned to work until May 19, 2004.

In May 2003, Plaintiff's driver's license was revoked. After contacting her supervisor, Plaintiff's prior approved "Family and Medical Leave" was extended through June 25, 2003.

3

Plaintiff did not return to work at the end of the "Family and Medical Leave."  On October 22, 2003, Plaintiff requested and received approval to go on unpaid "Contingency Leave" until the following July or August.[2]  On April 1, 2004, Defendant approved a transfer request of another employee to the Dublin office to fill the vacancy left by Plaintiff's absence.  On July 9, 2004, Plaintiff requested an extension of the "Contingency Leave" for six months from her most recent seizure occurring on June 13, 2004.  Defendant denied this request and terminated her employment effective August 1, 2004.  Mr. Johnson testified that he

> terminated Ms. White because she was unable to return to work following the expiration of her contingency leave.  Ms. White was unable to return to work for two reasons.  First, there was no suitable vacancy available to which Ms. White could return.  Under such circumstances, an employee is voluntarily separated at the conclusion of her contingency leave.  Second, Ms. White did not possess a valid Georgia driver's license and could not perform road tests, an essential function of a License Examiner.

Johnson Aff., ¶ 19.

### C.    Contentions

Plaintiff contends that she was the victim of discrimination.  She contends that she has made a *prima facie* case for violations under the ADA and the Rehabilitation Act of 1973.

---

[2]The parties are in dispute as to the exact time the "Contingency Leave" was to end. While Plaintiff contends that the contingency leave was set to end on August 16, 2004, Defendant contends that it was to end on July 16, 2004.  Because the court's analysis does not change depending on which is the actual date the leave ended, the court finds this matter to be immaterial.

4

Additionally, in her complaint Plaintiff alleges that Defendant violated the Georgia Fair Employment Act, O.C.G.A. § 45-19-20.

Defendant contends that it is entitled to summary judgment on all claims raised by Plaintiff in her complaint. First, Defendant contends that as a state agency, it is entitled to sovereign immunity as granted to the states by the Eleventh Amendment of the United States Constitution. Further, Defendant avers that Plaintiff has failed to make out a *prima facie* case of discrimination as required under the ADA and the Rehabilitation Act of 1973. In the alternative, Defendant argues that it has offered a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant avers that Plaintiff cannot and has not shown that the proffered reason is pretextual. Finally, with regard to Plaintiff's claim for a violation of the Georgia Fair Employment Act, Defendant contends that the law does not provide the Plaintiff with a cause of action.

## II.     Discussion

### A.     Eleventh Amendment - Sovereign Immunity

#### 1.     ADA Claims

Plaintiff has asserted claims under the Americans with Disabilities Act. The ADA's purpose is "'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Miller v. King,* 384 F.3d 1248, 1267 (11th Cir. 2004) (quoting 42 U.S.C. § 12101(b)(1) (1995)). The ADA generally prohibits discrimination against disabled individuals in the areas of employment (Title I); public

5

services, programs, and activities (Title II); and public accommodations (Title III).  *Miller,* 384 F.3d at 1268.   The Plaintiff's complaint focuses on her treatment in the area of employment.   Specifically, she is claiming that she was discriminated against when she was terminated from her job with the Department of Motor Vehicle Safety.   Thus, her claims under the ADA are governed by Title I of the statute.

Defendant contends that Plaintiff's ADA claim is barred by the Eleventh Amendment's guarantee of sovereign immunity.   The Eleventh Amendment to the United States Constitution provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. Const. amend. XI.   While the language of the Eleventh Amendment would seem to bar only those suits brought against a state either by citizens of another state or by citizens of a foreign state, the Supreme Court has interpreted the Eleventh Amendment to bar suits against a state brought by its own citizens.   *Univ. of Ala. Bd. of Trustees v. Garrett,* 531 U.S. 356, 363 (2001).   Furthermore, entities that are considered as an "arm of the state" are also immune from suit.   *Manders v. Lee,* 338 F.3d 1304, 1309 (11th Cir. 2003).

First, the court must determine whether Defendant, Georgia Department of Motor Vehicle Safety, qualifies as an arm of the state.   "In Eleventh Amendment cases, this Court uses four factors to determine whether an entity is an 'arm of the State' in carrying out a particular function:  (1) how state law defines the entity; (2) what degree of control the State

6

maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders*, 338 F.3d at 1309.

All evidence points to a determination that Defendant is an "arm of the State." The Georgia Code states that the Department of Motor Vehicle Safety "shall be an independent and distinct department of state government." O.C.G.A. § 40-16-7 (2004). Next, the State maintains tight control over Defendant. Of the nine-member board which controls Defendant, the Governor appoints five of its members, the Lieutenant Governor appoints two members, and the Speaker of the House for Georgia appoints two members. O.C.G.A. § 40-16-3 (2004). Moreover, the department must enforce any law when ordered to do so by the Governor. O.C.G.A. § 40-16-2 (2004). With regard to the third element of the analysis, Defendant is characterized as a "budget unit to which funds may be appropriated as provided in the 'Budget Act,' Part 1 of Article 4 of Chapter 12 of Title 45." O.C.G.A. § 40-16-7 (2004). Through the Office of Planning and Budget, the Governor metes out funds to the different "budget units" including Defendant. O.C.G.A. § 45-12-72 (2004). Therefore, Defendant's source of funding is the State of Georgia. Thus in regard to the fourth element, the State would ultimately be responsible for any judgment against Defendant because all of the Defendant's funds are allocated by the State. Moreover, Plaintiff has not challenged Defendant's characterization of itself as part of the State of Georgia. In fact, Plaintiff in her complaint characterized Defendant as "a state agency within the State of Georgia." Therefore, the court concludes that

7

the Defendant is an "arm of the State" entitled to the same sovereign immunity protection granted by the Eleventh Amendment that the state enjoys.

However, even a state's sovereign immunity may be overcome and a state may be sued in one of two situations. First, a state may waive its sovereign immunity. Second, Congress may abrogate a state's sovereign immunity. The Supreme Court in *Garrett* discussed whether the states' sovereign immunity rights were successfully abrogated by Congress' enactment of the ADA. *Garrett,* 531 U.S. at 363-74. The *Garrett* Court found that "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Id.* at 363 (internal quotations and citations omitted). While the Court found that in regard to the ADA, Congress unequivocally intended to abrogate the states' Eleventh Amendment immunity, it stated that Congress did not do so pursuant to a valid grant of constitutional authority. *Id.* at 364, 374. Thus, the *Garrett* Court held that Congress had not abrogated the states' Eleventh Amendment immunity from suits for monetary damages under Title I of the ADA.

Nevertheless, the courts have recognized an exception to the Eleventh Amendment grant of sovereign immunity with regard to prospective injunctive relief against state officials. *Ex Parte Young,* 209 U.S. 123 (1908). "[T]he Supreme Court reaffirmed the *Ex parte Young* exception, noting that its holding about monetary damages did not preclude suits under Title I of the ADA against state officials in their official capacities for injunctive relief." *Miller v. King,* 384 F.3d 1248, 1264 (11th Cir. 2004). This exception does not extend to

8

prospective relief against states or state agencies. *Puerto Rico Aqueduct v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

Here, Plaintiff is seeking monetary relief against a state agency which the court considers as an "arm of the State." Plaintiff in its complaint seeks damages, including back pay, compensatory damages for humiliation, pain, and suffering, and attorney's fees. None of what the Plaintiff is seeking can be characterized as prospective injunctive relief. Moreover, Plaintiff has not named any individual state actors from which she is seeking prospective injunctive relief. Rather, Plaintiff has only brought suit against the state agency.

Therefore, based on Defendants Eleventh Amendment immunity, the court GRANTS Defendant's motion for summary judgment with regard to Plaintiff's ADA claims.

### 2.     Rehabilitation Act Claim

Just as Congress has not abrogated the states' Eleventh Amendment immunity with regard to Title I of the ADA, Congress has not abrogated the states' Eleventh Amendment immunity with regard to the Rehabilitation Act. *See Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*, 261 F.3d 1242, 1244 (11th Cir. 2001) (per curiam), *vacated in part on reh'g* by 276 F.3d 1227 (11th Cir. 2001) (per curiam). However, the Eleventh Circuit Court of Appeals has concluded that states which accept federal funding do waive their Eleventh Amendment immunity for Rehabilitation Act claims. *See Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1290-93 (11th Cir. 2003) (per curiam).

In her complaint, Plaintiff alleged that Defendant received federal financial assistance. Defendant in its motion for summary judgment has not addressed the allegation that it received federal financial assistance. Thus, assuming the facts in a light most favorable to the non-moving party, the court concludes that Defendant received federal funds and thus has waived its right to Eleventh Amendment immunity with regard to Plaintiff's Rehabilitation Act claim.

**B.      Rehabilitation Act Claim**

Despite the fact that Plaintiff's ADA claim is barred by the Eleventh Amendment while Plaintiff's Rehabilitation Act Claim is not, "[t]he standard for determining liability under the Rehabilitation Act is the same as that under the ADA." *Sutton v. Lader*, 185 F.3d 1203, 1207, n.5 (11th Cir. 1999).

"In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of an ADA violation through circumstantial evidence using the familiar burden-shifting analysis employed in Title VII employment discrimination cases." *Wascura v. City of South Miami*, 257 F3d 1238, 1242 (11th Cir. 2001).  First, a plaintiff must establish a *prima facie* case of discrimination.  *Id.*

> Once a plaintiff establishes a *prima facie* case of discrimination, the defendant-employer must articulate a legitimate, non-discriminatory reason for the challenged action.   However, the employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons.   It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.

10

*Id.* at 1242-43 (internal citations and quotations omitted).

If the defendant is able to proffer a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff, for "the presumption of discrimination is eliminated."   *Id.* at 1243. At this point the plaintiff has the opportunity to attack the legitimacy of the defendant's given reasons.   *Id.*   A plaintiff may proceed with its case if it can produce evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."   *Id.*

11

### 1.      Prima Facie Discrimination

In order for Plaintiff to establish a *prima facie* claim of discrimination under the Rehabilitation Act, Plaintiff must show "that (1) [s]he has a disability, (2) [s]he is a qualified individual, which is to say, able to perform the essential functions of the employment position that [s]he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against [her] because of the disability."   *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229-30 (11th Cir. 2005).

Assuming, *arguendo*, that Plaintiff is disabled and that Defendant discriminated against Plaintiff, the court examines whether Plaintiff is a qualified individual, for the Rehabilitation Act only prohibits discrimination against qualified individuals.[3]   A qualified individual is an "'individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *D'Angelo*, 422 F.3d at 1229 (quoting 42 U.S.C. § 12111(8)).   Thus, a plaintiff must show either that she can perform the essential functions of her job without accommodation or that she could perform the essential functions of the job with reasonable accommodation.   *Id.*   In either situation a qualified individual must be able to preform the essential functions of the

---

[3] The parties are in dispute as to whether Plaintiff was disabled within the meaning of the statute.   Plaintiff relies primarily on *Otting v. J.C. Penny Company,* 233 F.3d 711 (8th Cir. 2000), to support her contention that she is disabled.   Defendant contends that *Otting* is at odds with the Supreme Court decision of *Toyota Motor Mfg., Ky, Inc., v. Williams*, 534 U.S. 184 (2002).   Because the court finds that Defendant is entitled to summary judgment on other grounds, the court does not address this dispute.

AO 72A
(Rev.8/82)

job. Therefore, logically an employer is not required to change or eliminate the essential functions of a job so as to comport to a disabled person's needs. *Id.*

Therefore, in determining if Plaintiff was a qualified individual, the court must first determine whether she could perform the essential functions of her job. "Whether a function is essential is evaluated on a case-by-case basis by examining a number of factors." *Davis v. Florida Power & Light Co.,* 205 F.3d 1301, 1305 (11th Cir. 2000). When determining whether a function is essential, the statute provides: "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).[4]

---

[4]    The ADA regulations provide that other factors to consider are: (1) the amount of time spent on the job performing the function, (2) the consequences of not requiring the incumbent to perform the function, (3) the terms of the collective bargaining agreement, (4) the work experience of past incumbents in the job, and (5) the current work experience of incumbents in similar jobs.

*Davis,* 205 F.3d at 1305 (citing 29 C.F.R. § 1630.2(n)(3)). The court should also consider three (nonexclusive) factors suggesting that a job function should be found essential:

(1) the reason the position exists is to perform the function; (2) there are a limited number of employees available among whom the performance of the job function can be distributed; and (3) the function is highly specialized so that the incumbent in the position was hired for his or her expertise or ability to perform the particular function.

*Holbrook v. City of Alpharetta, Ga.,* 112 F.3d 1522, 1526 (11th Cir. 1997) (citing 29 C.F.R.

13

Here, the issue is whether or not the administration of driving tests was an essential function of Plaintiff's job.   Defendant's director, Mr. Johnson, states in his affidavit that the administration of driving tests is an essential function of a "License Examiner."   He stated that "[t]he entire reason the Driver's License Examiner position exists is to test applicants for eligibility to receive / renew a driver's license."   Moreover, he stated, "[p]ossessing a valid Georgia driver's license is a requirement for the position of License Examiners [sic] because one of the essential functions of the position is to conduct road tests."

Further, Plaintiff concedes that according to the "Performance Management Form" provided by Defendant, the critical job or individual responsibilities listed for a driver examiner included seven tasks including:   "3. Administering road tests to evaluate applicant's driving abilities."   Next to this responsibility, as well as next to three other of the seven job responsibilities, is a handwritten note which states, "essential function."

Moreover, the State of Georgia Job Description posted on the state's employment website, contains a short job description for the job of "Driver Examiner" which states:

> Under immediate supervision, receives applications for and issues Georgia driver's licenses.   Verifies applicant's eligibility for driver's licenses; administers and grades written examinations on traffic laws, and administers road tests to rate applicants' driving ability.   Process reinstatement transactions accordingly.   Prepares reports to document workload activities and account for licenses issued and fees collected.

---

§ 1630.2(n)(2) (1996)).   However, because the Defendant's submitted testimony that the administration of road tests is an essential function is uncontroverted and because the parties have not addressed these issues, the court will not analyze these factors.

14

Later in the document under a list titled "Job Responsibilities & Performance Standards," the document contains eight subsets; the third subset contains the following language: "Administers road tests to evaluate applicant's driving ability (Performed by **all** incumbents)." (Emphasis added). This subset has six functions listed which describe the particular functions required of employees to carry out this larger responsibility. Finally, the document lists under a section headed "Notes" that "Georgia Residents must possess a valid Georgia Class C driver's license. Non-Georgia residents must have a recognized equivalent license." Finally, during Plaintiff's deposition, she recognized that the job of driver's license examiner existed in order to approve people for driver's licenses including the administration of road tests. White Depo. at 147.

The court finds that Defendant's assertion that the administration of the road tests was an essential function of Plaintiff's job as a "License Examiner" is not sufficiently put into controversy by the Plaintiff. Plaintiff offers two faulty arguments as to why the administration of road tests is not an essential function of the position of "License Examiner."

First, with reference to the "Performance Management Form," Plaintiff contends that none is noted in type as essential function and that four of the responsibilities are only noted in writing to be an "essential function." First, it is important to note that the term "essential function" is merely a term of art. The function does not have to be specifically labeled as such. The court seeks to discern what duties are so fundamental to the job that an employer

15

can expect to have them performed with or without accommodation. The testimony of Mr. Johnson, coupled with the job descriptions found on both the "Performance Management Form" and the employer's website, establish that the administration of road tests was an essential function of the position of "License Examiner."

Second, Plaintiff contends that the fact that she was not fired upon having her license revoked is evidence that the administration of road tests is not an essential function of her job. While failure to terminate might be strong evidence had Plaintiff continued to perform her job as a "License Examiner" despite not having a driver's license, she did not do so. After losing her license, Plaintiff was allowed to stay on Family Medical Leave and later on Contingency Leave but was not allowed to come into work and perform only some of the duties of License Examiner. Rather, she was permitted to be on leave in hopes of being seizure-free for six months after which she could regain her driver's license, return to work, and perform all the functions of a License Examiner. The court finds that allowing Plaintiff to go on leave rather than perform duties that did not require a driver's license to be further evidence that having a license was mandatory and that the administration of road tests was an essential function of Plaintiff's job.

All parties agree that under Georgia law Plaintiff could not have a driver's license. The court finds that because Plaintiff could not have a license and thus could not perform road tests, Plaintiff could not perform one of the essential functions of her job, and thus, the court further finds that Plaintiff is not a qualified individual for the purposes of the Rehabilitation

16

Act of 1973.   Therefore, the court finds that Plaintiff cannot make a *prima facie* case of discrimination under the Rehabilitation Act of 1973.   Therefore, the court GRANTS Defendant's motion for summary judgment with regard to Plaintiff's Rehabilitation Act claim.

### 2.      Legitimate Non-Discriminatory Reason

Even if Plaintiff had made a *prima facie* case of discrimination under the Rehabilitation Act of 1973, Defendant still should be granted summary judgment.   Defendant has offered two legitimate non-discriminatory reasons for Plaintiff's termination.   First, Defendant states that there was no suitable vacancy available to which Plaintiff   could return at the end of her leave, and that under such circumstances, an employee is voluntarily separated at the conclusion of her contingency leave.   Second, Defendant contends that Plaintiff was terminated because at the end of her leave she still did not possess a valid Georgia driver's license and could not perform road tests, an essential function of a Licence Examiner.

Once a defendant has provided a legitimate non-discriminatory reason for its action, the onus is on the Plaintiff to prove that such a reason is merely a pretext for discrimination. Here, Plaintiff provided no evidence that these reasons are pretextual in nature.   Accordingly, the court would have found that because Defendant had provided a legitimate non-discriminatory reason for its action and because Plaintiff did not submit any evidence to suggest that such reason was pretextual rather than legitimate, Defendant would have been entitled to summary judgment.

AO 72A
(Rev.8/82)

### C.      Georgia Fair Employment Practices Act

Plaintiff contends that Defendant's conduct violated the Georgia Fair Employment Practice Act ("FEPA"), O.C.G.A. § 45-19-20.   As the court has granted summary judgment to Defendant on Plaintiff's Federal ADA and Rehabilitation Act claims, the court finds it imprudent to assert pendent jurisdiction over Plaintiff's remaining state law claim.   Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise jurisdiction as to those claims over which it has supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction.   In exercising its discretion, the court should consider comity, judicial economy, convenience, and fairness to the parties.   *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994) (finding that the test as outlined in *Gibbs* should be used in accordance with § 1367).   The Eleventh Circuit has recognized "when all federal claims are eliminated before trial, the *Gibbs* factors will ordinarily point toward dismissing the state claims as well." *Edwards v. Okaloosa County*, 5 F3d 1431, 1433 (11th Cir. 1993) (citing *Carnegie-Mellon v. Cohill,* 484 U.S. 343, 350 n. 7 (1988)).

In light of the fact that Plaintiff's federal law claims have been dismissed prior to trial, the court exercises its discretion and declines to exercise subject matter jurisdiction over Plaintiff's remaining state law claim. *See Gibbs*, 383 U.S. at 726.

### III.      Conclusion

AO 72A
(Rev.8/82)

The court GRANTS Defendant's motion for summary judgment [25]. The Clerk of the Court is DIRECTED to DISMISS Plaintiff's complaint.

**IT IS SO ORDERED** this 12th day of January 2006.


_____s/ J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

19

AO 72A
(Rev.8/82)